Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| AUGUSTO CÉSAR SÁNCHEZ FUENTES<br><br>Recurrente<br><br>v.<br><br>JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO<br><br>Recurrido | KLRA202400562 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Caso número: 2024-0009<br><br>Sobre: Reajuste de pensión diferida |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 3 de diciembre de 2024.

Comparece la parte recurrente, Augusto C. Sánchez Fuentes, mediante un recurso de revisión judicial, y nos solicita que revoquemos la determinación emitida por la Junta de Retiro del Gobierno de Puerto Rico el 13 de agosto de 2024, notificada el 20 del mismo mes y año. Mediante el referido dictamen, la agencia confirmó la determinación del Director Ejecutivo, mediante la cual este último concedió al recurrente los beneficios de pensión retroactivos al 6 de diciembre de 2023.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida. Veamos.

## I

El 6 de abril de 2006, Augusto C. Sánchez Fuentes (Sánchez Fuentes o recurrente) presentó una *Solicitud para Transferencia de Aportaciones* ante la Junta de Retiro del Gobierno de Puerto Rico (Junta de Retiro o recurrida).[1] En esencia, Sánchez Fuentes solicitó

---

[1] Véase, *Solicitud para Transferencia de Aportaciones* en el expediente administrativo.

que las aportaciones que realizó al *Sistema de Anualidades y Pensiones para Maestros* le fueran transferidas al *Sistema de Retiro de los Empleados del Gobierno*; específicamente de la Legislatura, en donde ocupó el cargo de representante en la Cámara de Representantes de dicha rama.

La mencionada solicitud de transferencia fue aceptada por el Director del Área de Finanzas el 12 de diciembre de 2006, mientras que la transacción correspondiente fue realizada el 21 del mismo mes y año, mediante un importe de $3,707.08.[2]

Posteriormente, el 18 de septiembre de 2019, Sánchez Fuentes cumplimentó una *Solicitud de Estado de Cuenta*.[3] En dicho documento, afirmó que tramitó la transferencia de las aportaciones del *Sistema de Retiro de Maestro*, las cuales incluían los periodos desde el 1 de agosto de 1962 hasta el 30 de septiembre de 1971.

Así las cosas, el 9 de noviembre de 2023, Sánchez Fuentes sometió una *Solicitud de Pensión* del *Sistema de Retiro de Maestros* ante la Junta de Retiro.[4] Dicha solicitud fue recibida por la Coordinadora para Asuntos de Retiro, el 6 de diciembre de 2023.

Atendida la solicitud, el 19 de enero de 2024, mediante una misiva, el Director Ejecutivo de la Junta de Retiro le informó a Sánchez Fuentes que su Pensión del *Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 LPRA sec. 761 *et seq.* (Sistema de Retiro), fue aprobada.[5] Especificó que el referido retiro fue efectivo el 6 de diciembre de 2023 y la pensión mensual sería de $675.00, la cual incluía la anualidad híbrida. Expresó que Sánchez Fuentes comenzaría a recibir su pensión el 15 de febrero de 2024 y que recibiría un pago retroactivo calculado

---

[2] Véase, *Solicitud para Transferencia de Aportaciones* y *Recibo Auxiliar* en el expediente administrativo.
[3] Véase, *Solicitud de Estado de Cuenta* en el expediente administrativo.
[4] Véase, *Solicitud de Pensión* en el expediente administrativo.
[5] Véase, misiva del 19 de enero de 2024 en el expediente administrativo.

desde la fecha de efectividad de su pensión hasta que la misma fuera ingresada en nómina, en caso de que ello correspondiera.

En desacuerdo, el 7 de febrero de 2024, Sánchez Fuentes presentó una *Moción de Reconsideración (Enmendada)*.[6] En síntesis, arguyó que la fecha de efectividad de la pensión debía ser el 2 de septiembre de 2006, fecha en la que cumplió sesenta y cinco (65) años de edad. Argumentó que el expediente debía reflejar que había comenzado las gestiones para solicitar dicha pensión desde antes del 6 de diciembre de 2023. Por otro lado, alegó que los años acreditados eran más de 13.50, a pesar de que la Cámara de Representantes comenzó a realizar las deducciones y aportaciones al 2 de enero de 1993, fecha en la que prestó su juramento como representante de dicha rama.

Evaluada la solicitud de reconsideración, el 6 de marzo de 2024, el Director Ejecutivo de la Junta de Retiro circuló una misiva, mediante la cual le notificó a Sánchez Fuentes que su Pensión del Sistema de Retiro fue reajustada a $712.50 mensuales, efectivo desde el 6 de diciembre de 2023.[7] Indicó que dicha pensión se recibiría el 30 de marzo del año corriente y reiteró lo relacionado al pago retroactivo, de este ser aplicable.

Aún insatisfecho, el 27 de marzo de 2024, Sánchez Fuentes instó una *Apelación* ante la Junta de Retiro.[8] En esencia, planteó que la fecha de efectividad era el 2 de septiembre de 2006 y no el 6 de diciembre de 2023, según indicado por la agencia. Argumentó que su derecho a recibir una pensión surgió cuando cumplió la edad de cincuenta y ocho (58) años o sesenta y cinco (65) años de edad, no cuando se presentó el reclamo a través del documento intitulado *Solicitud de Pensión*. Alegó que, el 12 de abril de 1996, había

---

[6] Véase, *Moción de Reconsideración (Enmendada)* en el expediente administrativo.
[7] Véase, misiva del 6 de marzo de 2024 en el expediente administrativo.
[8] Véase, *Solicitud de Apelación* y *Apelación* en el expediente administrativo.

solicitado la transferencia de las aportaciones del *Sistema de Retiro de Maestros*, pero por razones desconocidas, la Junta de Retiro no realizó dicha transacción. Específico que advino en conocimiento de lo anterior en el año 2006, cuando estaba próximo a cumplir sus sesenta y cinco (65) años de edad y había retomado las gestiones para obtener la pensión correspondiente. Sostuvo que, por tal razón, tuvo que radicar nuevamente la *Solicitud para Transferencia de Aportaciones* el 6 de abril de 2006.

Sánchez Fuentes indicó en su recurso de apelación administrativa que, además, había recurrido al procedimiento de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* (PROMESA, por sus siglas en inglés), para tramitar una querella con relación a la fecha de efectividad de la pensión en controversia y la falta de acreditación de nueve (9) meses de aportación a su pensión. Aclaró que dicha querella fue referida por el foro federal al procedimiento administrativo propuesto por la Administración de Retiro. Por otro lado, reiteró que, desde que estaba próximo a cumplir la edad mínima requerida para recibir su pensión, había realizado las gestiones correspondientes ante la Junta de Retiro Central. Particularizó que, el 18 de septiembre de 2019, una funcionaria de la Administración de Retiro Central le había requerido una firma en una *Solicitud de Estado de Cuenta*, la cual fue contestada por la agencia el 7 de noviembre de 2023, indicando que no tenía los diez (10) años mínimos para tener derecho a su pensión. En virtud de lo anterior, sostuvo que no se le debía penalizar por los errores de los dos sistemas de retiro y, por ello, solicitó que: (1) se determinara que la fecha de efectividad de la pensión concedida era el 31 de diciembre de 2000, cuando cesó sus servicios en la Cámara de Representantes; o (2) en la alternativa, que la fecha de efectividad fuera el 2 de septiembre de 2006, cuando cumplió la edad de sesenta y cinco (65) años.

Por su parte, el 21 de mayo de 2024, la Junta de Retiro presentó una *Contestación a Apelación*.[9] En esencia, argumentó que lo solicitado por Sánchez Fuentes no procedía, toda vez que el Artículo 2-101(f) del Sistema de Retiro, 3 LPRA sec. 766(f), dispone que la efectividad de la anualidad por pensión diferida será efectiva a partir de ser solicitada por el participante. Sobre ese particular, indicó que Sánchez Fuentes presentó su *Solicitud de Pensión* el 6 de diciembre de 2023, por lo que no procedía la *Solicitud de Reajuste de Pensión* promovida por Sánchez Fuentes. En respuesta, el 21 de junio de 2024, Sánchez Fuentes replicó.[10]

Luego de varios trámites procesales, y celebrada una vista administrativa a esos efectos, el 13 de agosto de 2024, notificada el 20 del mismo mes y año, la Junta de Retiro emitió la *Resolución* que nos ocupa, mediante la cual confirmó la determinación del Director Ejecutivo.[11] En el referido dictamen, la agencia consignó las siguientes determinaciones de hechos:

1. Augusto César Sánchez Fuentes, en adelante el Sr. Sánchez o la parte [a]pelante, nació el 2 de septiembre de 1941 y tiene 82 años de edad. Prestó servicios en el Departamento de Instrucción Pública (actualmente, Departamento de Educación) como [m]aestro de nivel [i]ntermedio[,] desde el 1 de agosto de 1962 hasta el 30 de septiembre de 1971, acumulando 5 años, 8 meses y 9 días cotizados en el Sistema de Retiro para Maestros. Posteriormente, su último empleo en el servicio público fue en la Cámara de Representantes, donde ocupó el cargo de [r]epresentante[,] desde el 2 de enero de 1993 hasta el 31 de enero de 2000. Realizó su primer descuento para la Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y la Judicatura, actualmente conocida como la Junta de Retiro, el 1 de octubre de 1993, acumulando un total de 14.25 años cotizados desde su ingreso el 1 de agosto de 1962.

2. El Sr. Sánchez completó una Solicitud de Transferencia de Aportaciones del Sistema de Retiro para Maestros, la cual fue aceptada por el [d]irector del Área de Finanzas el 12 de diciembre de 2006. La transacción fue finiquitada ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y la Judicatura el 21 de diciembre de 2006, mediante el pago del importe de $3,707.08.

---

[9] Véase, *Contestación a Apelación* en el expediente administrativo.
[10] Véase, *R[é]plica a Contestación a Apelación* en el expediente administrativo.
[11] Apéndice del recurso. Véase, además, *Resolución* del 13 de agosto de 2024 en el expediente administrativo.

3. El 9 de noviembre de 2023, el Sr. Sánchez completó una Solicitud de Pensión por Edad y Años de Servicio, la cual fue presentada ante el [c]oordinador de Asuntos de Retiro de su agencia el 6 de diciembre de 2023 y radicada en la Junta de Retiro el 15 de diciembre de 2023.

4. La solicitud del Sr. Sánchez fue aprobada, y mediante comunicación escrita fechada el 19 de enero de 2024, se le notificó lo siguiente:

*Deseamos informarle que su Pensión de [la] Ley [Núm.] 447 ha sido aprobada. Su retiro fue efectivo el 6 de diciembre de 2023 y su pensión mensual será de $675.00, cantidad que incluye la anualidad híbrida. Comenzará a recibir su pensión el 15 de febrero de 2024. En caso de que corresponda, usted recibirá un pago retroactivo calculado desde la fecha de efectividad de su pensión hasta que la misma sea ingresada en nómina.*

*De usted no estar conforme podrá, dentro del término de veinte (20) días a partir de la notificación de la determinación, presentar una Moción de Reconsideración ante el Director Ejecutivo de la Junta de Retiro. Si el Director Ejecutivo la rechazare de plano o no actuare dentro de los quince (15) días, podrá presentar una Apelación a la Junta de Retiro dentro de un término de treinta (30) días contados a partir de la notificación de la denegatoria de Reconsideración o a partir de que hayan transcurrido los quince (15) días si el Director Ejecutivo no actuare sobre la solicitud de [r]econsideración.*

5. En desacuerdo, el Sr. Sánchez presentó una Moción de Reconsideración al Director Ejecutivo el 7 de febrero de 2024.

6. En una carta fechada el 6 de marzo de 2024, el Área de Servicios a Pensionados de la Junta de Retiro informó al Sr. Sánchez lo siguiente:

*Deseamos informarle que su Reajuste de Pensión de [la] Ley [Núm.] 447 ha sido aprobada[.] Su retiro fue efectivo el 6 de diciembre de 2023 y su pensión mensual reajustada será de $712.50. Comenzará a recibir su pensión reajustada el 30 de marzo de 2024. En caso de que corresponda, usted recibirá un pago retroactivo calculado desde la fecha de efectividad de su pensión hasta que la misma sea ingresada en nómina.*

*De usted no estar conforme podrá, dentro del término de veinte (20) días a partir de la notificación de la determinación, presentar una Moción de Reconsideración ante el Director Ejecutivo de la Junta de Retiro. Si el Director Ejecutivo la rechazare de plano o no actuare dentro de los quince (15) días, podrá presentar una Apelación a la Junta de Retiro dentro de un término de treinta (30) días contados a partir de la notificación de la denegatoria de [r]econsideración o a partir de que hayan transcurrido los quince (15) días si el Director Ejecutivo no actuare sobre la solicitud de [r]econsideración.*

7. Inconforme con la determinación recibida, el Sr. Sánchez presentó una Apelación ante la Oficina de Asuntos Adjudicativos de la Junta de Retiro el 27 de marzo de 2024. En síntesis, solicitó al foro que determine que la fecha de efectividad de la pensión concedida sea el 31 de diciembre de 2000, cuando cesó sus labores en el servicio

público, o alternativamente, el 2 de septiembre de 2006, cuando cumplió sesenta y cinco (65) años de edad. Acompañó copias con de *[sic]* las siguientes evidencias:

    a. *Comunicación del 19 de enero de 2024, emitida por el Área de Servicios al Pensionado.*
    b. *Moción de Reconsideración con ponche del 7 de febrero de 2024, suscrita por Augusto C. Sánchez Fuentes.*
    c. *Comunicación del 6 de marzo de 2024, emitida por el Área de Servicios a Pensionados.*
    d. *Solicitud para Transferencia de Aportaciones[,] suscrita por la [d]irectora de la Oficina de Personal el 12 de abril de 1996.*
    e. *Comunicación del 4 de marzo de 2002, emitida por la Junta de Retiro para Maestros.*
    f. *Solicitud para Transferencia de Aportaciones[,] suscrita por el Director de Personal el 2 de mayo de 2006.*
    g. *Hoja de Trámite del Sistema de Retiro de Maestros[,] con fecha del 13 de diciembre de 2006.*
    h. *Estado de Cuenta Estimado del 7 de noviembre de 2023.*
    i. *Formulario de Respuesta del Reclamante Exhibit A[,] firmad[o] el 22 de febrero de 2023.*
    j. *Recibo del correo postal federal (USPS) y comprobante de correo certificado (Certified Mail)[,] con fecha del 22 de febrero de 2023.*
    k. *Proof of Claim #115082 Title III, date filed 6/28/2018.*
    l. *Exhibit A[:] Formulario de Respuesta del Reclamante.*
    m. *Solicitud de Estado de Cuenta[,] ponchada por la Adm. Sistema de Retiro el 18 de septiembre de 2019.*
    n. *Solicitud de Estado de Cuenta[,] suscrita el 9 de noviembre de 2023.*
    o. *Solicitud de Pensión[,] suscrita el 9 de noviembre de 2023.*
    p. *Sobre de la Junta de Retiro con matasello del 03/07/2024.*

8. La jurisdicción del foro fue invocada, y se emitió una Orden el 10 de abril de 2024, para [la] celebración de una Conferencia con Antelación a Vista el 23 de mayo de 2024. Asimismo, se notificó el señalamiento de la Vista Administrativa para el 27 de junio de 2024.

9. La parte [a]pelante presentó [una] *Moción Informativa* el 1 de mayo de 2024.

10. El 21 de mayo de 2024, la parte [a]pelada presentó [una] *Moción Informativa para Status Conference* y, a su vez, su *Contestación a la Apelación* en la que solicitó confirmar la decisión de Retiro[,] conforme al Artículo 2-101 inciso (f) de la Ley [Núm.] 447 de[l] 15 de mayo de 1951, según enmendada, que establece: "*La efectividad de la anualidad por pensión diferida, provista en este Artículo, será efectiva a partir de ser solicitada por el participante.*" *[sic]*

11. La Conferencia con Antelación a Vista se celebró el 23 de mayo de 2024, presidida por la Lcda. Raquel Sosa Gierbolini como [o]ficial [e]xaminadora. La parte [a]pelante compareció representada por derecho propio, mientras que la parte [a]pelada estuvo representada por

la Lcda. Mayrangely Rodríguez Ramos. La parte [a]pelante fue orientada sobre su derecho a estar representada por un abogado y los lugares donde solicitar dichos servicios de manera gratuita. El [a]pelante manifestó su deseo de continuar por derecho propio. La controversia versó en determinar la fecha efectiva de la pensión.

12. El 21 de junio de 2024, la parte [a]pelante presentó [una] *Réplica a Contestación a Apelación,* en la que argumentó que la solicitud original de pensión se presentó en su agencia el 2 de mayo de 2006 y que la firmada el 6 de diciembre de 2023 fue solo un requerimiento de protocolo. Por lo tanto, solicitó que se ajuste la fecha de efectividad de la pensión. Además, adjuntó copias de la siguiente documentación:

   a. *Certificación de las cuotas aportadas al Sistema de Anualidades y Pensiones para Maestros[,] suscrita el 16 de noviembre de 2006 por un [o]ficial [de] [s]ervicios de Retiro.*
   b. *Comunicación del 30 de diciembre de 1996 sobre aportaciones acumuladas en el Sistema de Retiro para Maestros.*
   c. *Comunicación del 15 de mayo de 1996 de la Junta de Retiro para Maestros sobre [el] tiempo acreditado y en solicitud de documentación con el propósito de completar su expediente.*
   d. *Comunicación del 11 de junio de 2020 de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura en contestación a su Solicitud de Estado de Cuenta.*
   e. *Motion Opposing The Omnibus Objection for the United States District Court for [t]he District of Puerto Rico, suscrita por Augusto C. S[á]nchez Fuentes el 13 de febrero de 2020.*

13. La Vista Administrativa se celebró el 27 de junio de 2024, presidida por la Lcda. Raquel Sosa Gierbolini fungiendo como [o]ficial [e]xaminadora. La parte [a]pelante compareció representada por derecho propio y la parte [a]pelada se presentó representada *[sic]* por la Lcda. Mayrangely Rodríguez Ramos. El testimonio vertido se transcribe a continuación:

   *"Que su nombre es Augusto César Sánchez Fuentes. Que su fecha de nacimiento es el 2 de enero de 1941. Que cuenta con 82 años. Que fue [m]aestro en el Departamento de Instrucción Pública y [r]epresentante en la Cámara en el 1992. Que fue reelecto en el 1996. Que estuvo por dos términos." [sic]*[12]

Aquilatada la prueba desfilada durante la vista administrativa, la agencia recurrida expresó que, a pesar de la minuciosa búsqueda en el expediente administrativo, no encontró ninguna solicitud adicional, que no fuera la presentada por Sánchez

---

[12] Apéndice del recurso. Véase, además, *Resolución* del 13 de agosto de 2024 en el expediente administrativo.

Fuentes el 6 de diciembre de 2023. Indicó que lo que surgía del expediente administrativo eran varias solicitudes de estados de cuenta y una solicitud de transferencia de aportaciones. No obstante, determinó que ninguno de los referidos documentos se consideraban solicitudes de pensión. Concluyó que, según las disposiciones del Artículo 2-101(a) del Sistema de Retiro, *supra*, Sánchez Fuentes podía ser acreedor de los beneficios de pensión, computados a partir de la radicación de la referida solicitud de retiro. En vista de ello, resolvió que el Director Ejecutivo actuó correctamente al conceder los beneficios de la pensión en cuestión, retroactivos al 6 de diciembre de 2023, cónsono con la normativa antes expuesta.

En desacuerdo, el 4 de septiembre de 2024, Sánchez Fuentes presentó una *Moción Solicitando Resolución Enmendada*, así como una solicitud de reconsideración dos días después, las cuales no fueron atendidas por la agencia recurrida en el término aplicable para ello.[13]

Inconforme con la determinación de la agencia, el 11 de octubre de 2024, la parte recurrente compareció ante nos y señaló los siguientes errores:

> En la página cuatro (4) de la Resolución, el párrafo número trece (13) transcribe muy brevemente el testimonio vertido por el [recurrente] en la vista administrativa. También contiene un error en la transcripción[,] indicando que la fecha de nacimiento del [recurrente] es el dos (2) de enero de mil novecientos cuarenta y uno (1941). Se confunde la fecha de nacimiento con la fecha de juramentación del cargo de Representante en la Cámara que fue el día dos (2) de enero de mil novecientos noventa y tres (1993).
> Se omite en dicha determinación el testimonio del [recurrente], sobre todas las gestiones realizadas antes de terminar su cargo en la Cámara, el día treinta y uno (31) de diciembre del año dos mil (2000), sobre su deseo de obtener la pensión correspondiente.
>
> Se omite también el testimonio del [recurrente] sobre las directrices que recibió para presentarse en la Oficina de

---

[13] Apéndice del recurso. Véase, además, *Moción Solicitando Resolución Enmendada* y *Moción Solicitando Reconsideración* en el expediente administrativo.

Personal de la Cámara de Representantes cuatro (4) meses antes de la fecha en que cumpliría sesenta y cinco (65) años de edad para solicitar su pensión; gestión que evidenció haber realizado el día dos (2) de mayo de mil novecientos noventa y seis (1996); fecha en que tuvo que firmar otra solicitud de transferencia de aportaciones de la Junta de Retiro [p]ara Maestros y[,] posiblemente[,] el Formulario de Solicitud de Pensión, el cual no apareció en el expediente y era responsabilidad de la Oficina de Personal de la Cámara de Representantes, radicar ante la Junta de Retiro.

Erró la [p]arte [r]ecurrida al interpretar las disposiciones del Art[í]culo 2-101(a) (3 L.P.R.A[.] sec. 766[a]) de la Ley [Núm.] 447 del quince (15) de mayo de 1951, según enmendada; el cual establece claramente el derecho sustantivo que tendrán los participantes al separarse del servicio después de cumplir las edades y haber completado el per[í]odo de servicio requerido. La Junta confunde la fecha de radicación de un documento titulado (Solicitud de Pensión) con la acción afirmativa del [r]ecurrente de presentarse ante la Oficina de Personal de la Cámara de Representantes; lo que toda la documentación y el tracto procesal establecieron que ocurrió el día seis (6) de mayo de dos mil seis (2006) para que fuera efectiva en la fecha del cumpleaños sesenta y cinco (65), el día dos (2) de septiembre de dicho año.

Erró la [r]ecurrida al privar al [r]ecurrente de su derecho constitucional de propiedad sobre la pensión adquirida bajo la excusa de que no se encontró en el expediente un documento que no era responsabilidad suya preparar y solo lo podía radicar la última agencia en que trabajó el [r]ecurrente. (Énfasis omitido).

En cumplimiento con nuestra *Resolución* del 16 de octubre de 2024, la parte recurrida compareció mediante *Alegato en Oposición de la Parte Recurrida* el 18 de noviembre del mismo año.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y*

*otros*, 2024 TSPR 70, resuelto el 24 de junio de 2024; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82, resuelto el 24 de julio de 2024; *Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, y *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud,* supra; *Torres Rivera v. Policía de PR,* supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía,* supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico fue establecido mediante la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 LPRA sec. 761 *et seq.* (Sistema de Retiro). De conformidad con dicho estatuto, se instituyó la Administración de los Sistemas de Retiro, con el propósito de asegurarles una fuente de ingreso a los empleados y

las empleadas del sector público, una vez concluida su aportación laboral al servicio del país.

Cónsono con la normativa consagrada por el Sistema de Retiros, el Tribunal Supremo de Puerto Rico ha reconocido que "[e]l derecho a pensión de retiro por años de servicio del empleado público tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que[,] habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado". *Bayrón Toro v. Serra*, 119 DPR 605, 616 (1987), citando a *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 92 (1981). (Citas omitidas). Por otro lado, las pensiones en el sector público cobran mayor importancia, pues constituyen un incentivo para reclutar personal competente frente a los salarios más altos que se ofrecen en la empresa privada. *Íd*. En ese sentido, el Sistema de Retiro constituye, por tanto, un estatuto remedial que busca el bienestar de los empleados y las empleadas cubiertas por sus disposiciones y debe de interpretarse liberalmente a favor de estas. *Morales v. Adm. Sistemas de Retiro*, 123 DPR 589, 595 (1988).

El Sistema de Retiro es una ley general que provee beneficios de retiro a los empleados y las empleadas del gobierno estatal y que contiene varias modalidades de pensiones o anualidades. Entre las referidas modalidades se encuentra el retiro por edad; por años de servicio y de mérito; por incapacidad ocupacional y no ocupacional. *Pérez et als. v. Depto. de la Familia*, 156 DPR 223, 230 (2002); *Calderón v. Adm. Sistemas de Retiro*, 129 DPR 1020, 1031-1032 (1992). La naturaleza jurídica de las pensiones de los empleados y las empleadas públicas constituye una retribución final y bien ganada a la persona empleada "que[,] honrando una vocación de servicio, que en muchas ocasiones conlleva sacrificio y renuncia de bienes materiales dedica los años fructíferos de su vida al bien

común". *Román Mayol v. Tribunal Superior*, 101 DPR 807, 811 (1973).

En cuanto al inicio de las anualidades de Retiro por edad, mérito o diferidas, el Artículo 2-101(a)(f) del Sistema de Retiro, 3 LPRA sec. 766(a)(f), dispone específicamente que:

(a) Al separarse del servicio al cumplir, o después de cumplir las edades y haber completado el periodo de servicio que más adelante se indica, todos los participantes que no hubieren recibido el reembolso de sus aportaciones acumuladas, tendrán derecho a percibir una anualidad por retiro. **Dicha anualidad comenzará en la fecha en que el participante radique la solicitud de retiro, pero en ningún caso antes de su separación [del servicio]**.

[…]

(f) **La efectividad de la anualidad por pensión diferida, provista en esta sección, será efectiva a partir de ser solicitada por el participante**. (Énfasis nuestro).

## C

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los foros inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el foro de origen desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro juzgador. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función del foro juzgador. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el foro recurrido. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el foro de origen, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro recurrido. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro inferior. *Íd.*

En lo atinente al caso de autos, en recursos de revisión judicial, la transcripción de la vista administrativa o una exposición narrativa de la prueba son imprescindibles cuando se cuestiona la

apreciación de la prueba y la adjudicación de credibilidad del foro administrativo. Los tribunales revisores no deben intervenir con la apreciación de la prueba oral de las agencias, si no tienen forma de evaluar la evidencia presentada, debido a que no se elevó una transcripción o una exposición narrativa de la prueba. El Tribunal Supremo de Puerto Rico ha reconocido que, en ausencia de la prueba oral, difícilmente se podrá descartar la determinación impugnada. Por lo tanto, la parte interesada tiene que presentar la prueba oral bajo la que se pretende impugnar las determinaciones de una agencia administrativa. En particular, la Regla 66 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 66, establece el trámite a seguir para que se autorice la reproducción de la prueba oral desfilada en el procedimiento administrativo. De otro lado, la Regla 29.5 del Reglamento Núm. 8034, *supra*, dispone que cualquier parte podrá solicitar copia certificada del expediente y de la transcripción de la vista, mediante el pago de los cargos correspondientes. *Graciani Rodríguez v. Garage Isla Verde,* supra, págs. 128-130.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su primer señalamiento de error, el recurrente argumenta que la Junta de Retiro incidió al transcribir que, en el testimonio vertido en la vista administrativa, este declaró que su fecha de nacimiento era el 2 de enero de 1941. Arguye que la agencia confundió la fecha de nacimiento con la fecha de juramentación del cargo de representante en la Cámara de Representantes.

Por su parte, la agencia recurrida admite que dicho error se cometió. En particular, indica que la fecha de nacimiento plasmada en la página 4 de la determinación que nos ocupa fue un error en la transcripción. No obstante, sostiene que la fecha de nacimiento

correcta surge de la determinación de hecho número 1 de la *Resolución* recurrida. Asimismo, asegura que dicha información quedó evidenciada mediante múltiples documentos oficiales, incluyendo el Certificado de Nacimiento de Sánchez Fuentes, los cuales obran en el expediente administrativo.

Examinada la totalidad de los documentos que obran en autos, así como la copia certificada del expediente administrativo, constatamos que, en efecto, la fecha de nacimiento de Sánchez Fuentes es el 2 de septiembre de 1941, según surge de la primera determinación de hechos del dictamen recurrido. Si bien el recurrente tiene razón en su planteamiento de que en la página 4 de la *Resolución* que nos ocupa dicha fecha fue erróneamente transcrita, según admitido por la propia recurrida, ello no constituye un error sustancial que amerite nuestra intervención para variar lo allí resuelto.

Como segundo señalamiento de error, el recurrente sostiene que la parte recurrida omitió incluir en la determinación impugnada su testimonio, específicamente sobre todas las gestiones realizadas por este antes de terminar su cargo en la Cámara de Representantes y sobre su deseo de obtener la pensión correspondiente. En su tercer error señalado, el recurrente alega que el organismo administrativo también omitió su testimonio sobre las directrices que recibió para presentarse en la Oficina de Personal de la Cámara de Representantes cuatro (4) meses antes de la fecha en que cumpliría sesenta y cinco (65) años de edad para solicitar su pensión. Por estar relacionados entre sí, discutiremos ambos errores en conjunto.

En esencia, la parte recurrente cuestiona asuntos que requieren necesariamente la revisión de la transcripción de la prueba oral vertida en la vista administrativa en su fondo. No obstante, el recurrente no presentó ante esta Curia una transcripción de la prueba oral, ni una exposición narrativa a esos

efectos. Sin la prueba oral a la cual el recurrente hace referencia en su recurso, no podemos entrar a revisar los méritos de los referidos errores señalados y variar de algún modo las determinaciones impugnadas de la agencia. La falta de esa evidencia nos imposibilita descartar la apreciación de la prueba de la Junta de Retiro en el presente caso.

Por otro lado, como cuarto señalamiento de error, el recurrente plantea que la Junta de Retiro incidió en su interpretación del Artículo 2-101(a) del Sistema de Retiro, *supra.* En particular, argumenta que la agencia confunde la fecha de radicación de un documento titulado *Solicitud de Pensión* con su acción afirmativa de presentarse ante la Oficina de Personal de la Cámara de Representantes. Alega que ello fue comprobado con toda la documentación y el tracto procesal que ocurrió el 6 de mayo de 2006 para que la pensión fuera efectiva en la fecha del cumpleaños sesenta y cinco (65), el día 2 de septiembre de 2006. De otro lado, en su quinto y último error señalado, arguye que la parte recurrida erró al privarlo de su derecho constitucional de propiedad sobre la pensión adquirida. Según aduce, ello ocurrió cuando la agencia recurrida utilizó como excusa que no encontró en el expediente un documento, el cual no era responsabilidad suya preparar y solo lo podía radicar la última agencia en la que trabajó. Al estar relacionados, discutiremos ambos errores en conjunto.

Un examen sosegado del expediente que nos ocupa mueve nuestro criterio a resolver que no se hacen presentes los criterios legales que legitiman nuestra intervención respecto a lo dispuesto por el organismo administrativo concernido. A nuestro juicio, la determinación aquí impugnada obedeció a un ejercicio razonable de apreciación de prueba por parte de la entidad recurrida, a la adecuada función de las facultades legales que le asisten, así como también, a una correcta interpretación y aplicación del derecho

pertinente. En particular, la *Resolución* recurrida está basada en evidencia sustancial que no fue controvertida por la parte recurrente.

El Artículo 2-101(a) del Sistema de Retiro, *supra*, dispone expresamente que la anualidad comenzará en la fecha en que el participante radique la solicitud de retiro. Dicho lenguaje es claro al establecer que la solicitud de retiro se tiene que "radicar"; es decir, requiere que la persona someta una petición formal de pensión mediante un formulario a esos efectos ante la Junta de Retiro. En el expediente ante nos, y en la copia certificada del expediente administrativo, surge una única *Solicitud de Pensión* con fecha del 9 de noviembre de 2023, recibida por la Coordinadora para Asuntos de Retiro el 6 de diciembre de 2023. Si bien es cierto lo indicado por el recurrente de que en los documentos que conforman el expediente administrativo se encuentran varias de las gestiones realizadas por este a través de los años en cuanto a su retiro, ello no cumple con lo exigido por el citado articulado. Contrario a lo propuesto por el recurrente de que sus acciones afirmativas se deben interpretar inequívocamente como su intención de solicitar la pensión en cuestión, para efectos del Artículo 2-101(a) del Sistema de Retiro, *supra,* tales gestiones no son suficientes, pues el citado estatuto exige la radicación de una solicitud oficial de pensión, como la suscrita por el recurrente el 9 de noviembre de 2023, recibida por la agencia el 6 de diciembre del mismo año.

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario atribuible a la Junta de Retiro. Por tanto, en ausencia de prueba al contrario, solo podemos sostener su determinación.

**IV**

Por los fundamentos que anteceden, confirmamos la determinación administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones